UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

WELTON JOHNSON,

    Plaintiff,

v.

WESTERN HOTEL & CASINO; and
PLAYLV GAMING OPERATIONS, LLC,

    Defendants.

2:10-CV-01590-PMP-RJJ

O R D E R

    Presently before the Court is Defendants Western Hotel & Casino and PlayLV Gaming Operations, LLC's Second Motion for Summary Judgment (Doc. #45), filed on June 1, 2011. Plaintiff Welton Johnson filed an Opposition (Doc. #46) on June 24, 2011. Defendants Western Hotel & Casino and PlayLV Gaming Operations, LLC filed a Reply (Doc. #48) on July 11, 2011.

**I. BACKGROUND**

    Defendants Western Hotel & Casino ("Western") and PlayLV Gaming Operations ("PlayLV") terminated Plaintiff Welton Johnson ("Johnson") from his position as security supervisor. Johnson, an African American male, now brings suit for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and Nevada Revised Statutes § 613.330.

    Johnson began working for Western in August 2003 as a security officer. (Defs.' Second MSJ (Doc. #45), Ex. 2 at 30-31.) On October 13, 2003, Western counseled Johnson to keep the volume on his radio turned up during breaks. (Defs.' Second MSJ, Exs. 1, 2 at

33.) On June 10, 2004, Johnson balled his fist at a guest in custody in response to the guest's use of an obscenity directed at Johnson. (Defs.' Second MSJ, Exs. 1, 2 at 31-33.) After this incident, on August 17, 2004, Johnson received training on the Security Department Standard Operating Policy regarding the proper use of force, including instructions that "[i]f a suspect is yelling obscenities at you, you do not have the authorization to yell obscenities back at that person." (Defs.' Second MSJ, Ex. 2 at 73, Ex. 3, Ex. 9 SOP #3.) Johnson understood that violating company policy could result in termination of employment. (Defs.' Second MSJ, Ex. 2 at 73.) After about two years of employment, in August 2005, Johnson quit for a family emergency. (Id. at 30-31.)

Less than one year later Plaintiff began a second period of employment with Western. (Defs.' Second MSJ, Ex. 2 at 52-53, Ex. 4.) In May 2006, Western security manager Debra Knowles ("Knowles"), an African American woman, contacted Johnson and encouraged Johnson to apply for an assistant security supervisor position. (Defs.' MSJ (Doc. #21), Ex. A at 2; Defs.' Second MSJ, Ex. 2 at 52-53, Ex. 4.) On June 2, 2006, Western rehired Johnson as a security supervisor. (Defs.' Second MSJ, Ex. 5.) On September 4, 2006, Knowles changed Johnson's pay from hourly to salary, which amounted to a promotion. (Defs.' Second MSJ, Ex. 2 at 127-28, Ex. 11.)

On December 2, 2006, a male guest tried to bring a female visitor onto Western property. (Defs.' Second MSJ, Ex. 2 at 74-75.) Per hotel policy, staff removed the visitor because she did not present identification and register at the front desk. (Id. at 74-75.) The guest became agitated and disruptive to other guests. (Id. at 75-76.)

Johnson approached the guest and asked him to stop cursing and disturbing other guests. (Id. at 75-76.) The guest directed a number of obscenities and racial epithets at Johnson and asked Johnson what time he got off work. (Defs.' Second MSJ, Ex. 16.) Johnson raised his arms to gesture to the guest to calm down, and the guest hit one of Johnson's hands. (Defs.' Second MSJ, Ex. 2 at 77-78.) Johnson "took it as an aggressive

2

move towards" him.  (Id. at 77-78.)  According to the Surveillance Incident Report, Johnson then lunged at the guest; however, Johnson disputes this fact.  (Defs.' Second MSJ, Ex. 2 at 85, Ex. 12.)  However, it is undisputed Johnson pushed the guest into the corner, physically grabbed the guest, and put the guest on the floor.  (Defs.' Second MSJ, Ex. 2 at 77, Ex. 7 at 6, Ex. 12.)  Two other security officers assisted Johnson in handcuffing and transporting the guest to the security office.  (Defs.' Second MSJ, Ex. 2 at 77, Ex. 12 at 1.)

While handcuffed and detained in the security office, the guest continued directing obscenities and racial epithets at Johnson.  (Defs.' Second MSJ, Ex. 2 at 79, Ex. 7 at 6.)  In his response to an interrogatory, Johnson stated he told the guest "I will beat your ass even in handcuffs."  (Defs.' Second MSJ, Ex. 7 at 6.)  But in his deposition, Johnson described the encounter differently:  "I told him if he didn't have those handcuffs on, I would whoop his ass."  (Defs.' Second MSJ, Ex. 2 at 79.)  Johnson did not move towards the guest or feign assaulting him.  (Defs.' Second MSJ, Ex. 7 at 6.)  Las Vegas Metropolitan Police arrived and escorted the guest off Western property.  (Defs.' Second MSJ, Ex. 12 at 1-2.)

On December 3, 2006, Knowles suspended Johnson pending investigation of the incident.  (Defs.' Second MSJ, Ex. 14.)  At a meeting with Western security management, Johnson stated, "I guess that I crossed [the] line but I was not going to take it anymore." (Defs.' Second MSJ, Ex. 15.)  On December 5, Johnson met with Human Resource ("HR") Manager Paulette Swenson ("Swenson") and told her "he knew it was a stupid thing to say" and "he needed to be calmer."  (Defs.' Second MSJ, Ex. 16.)  On December 8, 2006, Knowles terminated Johnson's employment for violating company policy, specifically for assaulting a guest.  (Defs.' Second MSJ, Ex. 2 at 95-97, Ex. 7 at 4-5, Ex. 17.)  Johnson admitted in his deposition that Western was justified in terminating him for violating company policy.  (Defs.' Second MSJ, Ex. 2 at 98.)

1          Following Johnson's termination, another security supervisor, Brian Smith
2  ("Smith"), a Caucasian male, participated in an altercation with a guest. (Defs.' Second
3  MSJ, Ex. 2 at 127-28, Ex. 7 at 3.) On December 26, 2006, Smith and another security
4  officer were dispatched to a ladies restroom at Western. (Defs.' Second MSJ, Ex. 18; Pl.'s
5  Opp'n (Doc #46), Ex. 2 at 2.) The officers identified themselves as security and observed a
6  male guest urinating in a stall. (Defs.' Second MSJ, Ex. 18; Pl.'s Opp'n, Ex. 2 at 2.) The
7  officers suspected the guest was intoxicated and asked the guest to leave the property.
8  (Defs.' Second MSJ, Ex. 18; Pl.'s Opp'n, Ex. 2 at 2.) The guest became hostile, began
9  cursing, and attempted to fight with security. (Defs.' Second MSJ, Ex. 18.) The officers
10 escorted the guest to the south doors of the casino and followed the guest outside. (Pl.'s
11 Opp'n, Ex. 2 at 2.)
12         The Security Department Standard Operating Procedure relating to trespassing
13 guests does not specifically proscribe following guests off Western property. (Defs.'
14 Second MSJ, Ex. 9 SOP #4.) But according to Assistant Security Supervisor Rene
15 Strickland ("Strickland"), who observed the incident, the officers should have stopped at
16 the casino doors, per their Security Department Manager. (Pl.'s Opp'n, Ex. 2 at 2, Ex. 3 at
17 1-2.) The Security Department Incident Report indicates Smith escorted the guest towards
18 the south parking lot. But from Strickland's perspective the guest lured Smith off casino
19 property and into the street. (Defs.' Second MSJ, Ex. 18; Pl.'s Opp'n, Ex. 2 at 2.)
20 Strickland also reported that the guest was "mouthing off," Smith "put his hands on the
21 guest first," and a fight ensued. (Defs.' Second MSJ, Ex. 23 at 3.) Additionally, Security
22 Officer Frank Hingada ("Hingada") reported that Smith began arguing with the guest in the
23 street, and the guest threatened Smith. (Pl.'s Opp'n, Ex. 3 at 2.) The Incident Report
24 indicates the guest kicked Smith's feet, after which Smith and the other security officers
25 handcuffed the guest, escorted the guest to the security office, and contacted Las Vegas
26 Metropolitan Police. (Defs.' Second MSJ, Ex. 18.) While detained in the security office,

the guest spit on Strickland, called the officers names, kicked the filing cabinet, and tried to kick Strickland.  (Id.)

Following the incident, Hingada filed an incident report.  (Defs.' Second MSJ, Ex. 18.)  The report indicates surveillance did not review the video.  (Id.)  In their affidavits, Knowles, Swenson, and Executive Director of Human Resources Henry Terry stated that they first became aware of the Smith incident in March 2007, when witnesses made allegations of improper behavior to the Nevada Equal Rights Commission ("NERC"). (Defs.' MSJ, Ex. A at 2-3, Ex. C at 2, Ex. D at 2.)  Neither Knowles nor Swenson conducted a full investigation because "it was impossible to complete one in a fair and complete manner" because three months had passed.  (Defs.' MSJ, Ex. A at 3, Ex. C at 2.) But Knowles did review the security log and found no indications of improper behavior. (Defs.' MSJ, Ex. A at 3.)  Similarly, Safety and Risk Manager Donald Green states in his affidavit that he has no knowledge of the Smith incident.  (Defs.' MSJ, Ex. B at 3.)

In March 2010, the Equal Employment Opportunity Commission ("EEOC") Investigator Mario Banos Melendez ("Banos") inquired into the Smith incident.  (Pl.'s Opp'n, Ex. 1, Ex. 3 at 2.)  Banos reported that Western retains video surveillance for seven days, after which the video is deleted unless an incident raises liability concerns.  (Pl.'s Opp'n, Ex. 3 at 2.)  Western claims it did not retain the video of the Smith incident because Western was not aware of the incident.  (Id.)  In her deposition, Swenson testified that incident reports are forwarded to HR by managers, directors, and supervisors.  (Pl.'s Opp'n, Ex. 4 at 87.)  However, no written policy exists relating to when employees should forward incident reports to management.  (Id.)

In his report, Banos concluded the guest was leaving the property voluntarily; therefore, it was unnecessary for Smith to follow the guest into the street.  (Pl.'s Opp'n, Ex. 3 at 2.)  In Banos's opinion, Smith's actions were "more egregious" than Johnson's actions because they could lead to greater liability for Western.  (Id.)  Banos discovered Western

had disciplined Smith for losing a $300 bag of quarters, excessive absences, and losing an original fill ticket. (Pl.'s Opp'n, Ex. 3 at 2.)  But Smith had no prior discipline related to use of force or following guests off company property.

On March 10, 2007, about three months after Smith followed the guest off Western property, Western counseled Smith to keep the volume on his radio turned up. (Defs.' Second MSJ, Ex. 19.)  On March 15, 2007, Knowles suspended Smith pending investigation. (Defs.' Second MSJ, Ex. 20.)  Security management decided to bring Smith back to work and demote him from security supervisor to officer. (Defs.' Second MSJ, Ex. 21, 22.)

On January 31, 2007, Johnson filed a Charge of Discrimination with NERC and the EEOC. (Defs.' Second MSJ, Ex. 6.)  NERC issued a decision on November 6, 2008, finding a lack of probable cause to support Johnson's charge of race discrimination. (Id.)  However, on March 30, 2010 the EEOC issued a Letter of Determination finding reasonable cause to believe that Western terminated Johnson because of his race. (Pl.'s Opp'n, Ex. 1.)  The EEOC issued Johnson a Right to Sue Letter on September 7, 2010. (Compl., Ex. 2.)  Johnson filed suit in this Court on September 16, 2010 against Defendants alleging race discrimination in violation of Title VII and Nevada Revised Statutes § 613.330(1)(a).

Defendants now move for summary judgment on both race discrimination claims against them. Specifically, Defendants argue Johnson has not established a prima facie case of race discrimination or provided evidence of pretext. Defendants alternatively ask this Court to limit damages. Plaintiff opposes the motion as it relates to the race discrimination claims, but does not oppose the request to limit damages.

**II. DISCUSSION**

Summary judgment is appropriate " if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

6

Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id. The Court views all evidence in the light most favorable to the non-moving party. Id.

Under Title VII it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Similarly, Nevada Revised Statutes § 613.330(1)(a) makes it unlawful for an employer "to discharge any person, or otherwise to discriminate against any person with respect to the person's compensation, terms, conditions or privileges of employment, because of his or her race."

In response to a motion for summary judgment, a plaintiff claiming race discrimination under Title VII or Nevada Revised Statutes § 613.330(1)(a) may offer direct or circumstantial evidence that a discriminatory reason more likely than not motivated the employer, or alternatively, may proceed under the McDonnell Douglas analysis. McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004); see Apeceche v. White Pine Cnty., 615 P.2d 975, 977-78 (Nev. 1980) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 793, 802 (1973)). Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of race discrimination. McDonnell Douglas, 411 U.S. at 802. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. Id. If

the defendant does so, the burden shifts back to the plaintiff to prove defendant's nondiscriminatory reason is pretextual. Id. at 804.

**A. Johnson's Prima Facie Case**

A plaintiff can establish a prima facie case of race discrimination by demonstrating he or she (1) belongs to a class of persons protected by Title VII, (2) performed his or her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated differently from a similarly situated employee not a member of the same protected class as the plaintiff. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006). The amount of evidence necessary to establish a prima facie case is minimal on summary judgment and "does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994). Rather, the evidence need only "give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Here, the parties do not dispute the first and third elements; as an African American Johnson is a member of a protected class, and Johnson suffered an adverse employment action when Western terminated his employment. Accordingly, the Court will focus on the second and fourth elements of the prima facie case.

1. Whether Johnson Performed His Job Satisfactorily

To satisfy the second element of the prima facie case, a plaintiff must show he or she performed his or her job satisfactorily. To establish this element, a plaintiff "need only produce substantial evidence of satisfactory job performance sufficient to create a jury question on this issue." Douglas v. Anderson, 656 F.2d 528, 533 n.5 (9th Cir. 1981). At the prima facie stage, the plaintiff need not "eliminate the possibility that he was laid off for inadequate job performance"—such a requirement would "conflate the minimal inference needed to establish a prima facie case with the specific, substantial showing" required at the pretext stage of the McDonnell Douglas analysis. Aragon v. Republic Silver State Disposal

Inc., 292 F.3d 654, 659 (9th Cir. 2002). Moreover, courts do not require a "flawless personnel file at all times during employment." Bahri v. Home Depot USA, Inc., 242 F. Supp. 2d 922, 931 (D. Or. 2002). For instance, a plaintiff satisfies this element when deficiencies in performance are infrequent and minor. Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1206, 1208 (9th Cir. 2008). By contrast, a plaintiff who openly violates company policy and continues to do so, despite a warning, cannot demonstrate satisfactory performance. Id. at 1205-06, 1208. Furthermore, the plaintiff need only offer evidence of satisfactory job performance prior to the allegedly unlawful discrimination. Bahri, 242 F. Supp. 2d at 931.

Here, taking the evidence in the light most favorable to Johnson, genuine issues of fact remain as to whether Johnson performed his job satisfactorily. Western disciplined Johnson on only two occasions, the radio incident and the fist incident, thus his deficiencies in job performance were infrequent and minor. Additionally, Johnson did not continue to violate company policy immediately after being disciplined. Rather, both incidents occurred during Johnson's first period of employment, after which Western rehired and promoted Johnson, and over two years passed before the incident at issue in this case. Therefore, the Court finds Johnson has presented sufficient evidence to establish a prima facie case that Johnson satisfactorily performed his job.

### 2. Whether Johnson and Smith Are Similarly Situated

To establish the fourth element of a prima facie case, a plaintiff must show his or her employer treated the plaintiff differently from a similarly situated employee outside plaintiff's protected class. Cornwell, 439 F.3d at 1028. Whether employees are similarly situated is both an element of the plaintiff's prima facie case and evidence of pretext. Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1158 (9th Cir. 2010). But it is important to keep these steps separate because "[t]o do otherwise would in many instances collapse the three step analysis into a single initial step at which all issues would be resolved." Lynn v.

Regents of Univ. of Cal., 656 F.2d 1337, 1344 (9th Cir. 1981). At the prima facie stage, the plaintiff's burden is "not onerous," and the evidence need only "give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253.

More specifically, a plaintiff must demonstrate that he or she is similarly situated in "material respects" to an employee outside plaintiff's protected class who received more favorable treatment. Earl v. Nielsen Media Research, Inc., --- F.3d ----, 2011 WL 4436250, at *5 (9th Cir. Sept. 26, 2011). But the employees need not be identically situated. Id.; see also McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001). "It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees." Earl, 2011 WL 4436250, at *5 (quoting Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007)). Rather, the similarities must support a "minimal inference that the difference of treatment may be attributable to discrimination." McGuinness, 263 F.3d at 54. Because the standard at the prima facie stage is minimal, the distinctions between employees must be material to undermine a plaintiff's prima facie case. Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1125-26 (9th Cir. 2009).

To determine whether employees are similarly situated in all material respects, courts consider a number of factors, but materiality depends on the circumstances and facts of each case. Hawn, 615 F.3d at 1157. For example, courts evaluate whether the employees had similar jobs, the same supervisor, and were subject to the same standards. Vasquez v. Cnty. of L.A., 349 F.3d 634, 641-42 & n.17 (9th Cir. 2003) (citing Hollins v. Atl. Co., 188 F.3d 652, 659 (6th Cir. 1999)). Courts also consider whether the employees engaged in similar conduct and possessed similar disciplinary records. Id. at 641; Wall v. Nat'l R.R. Passenger Corp, 718 F.2d 906, 909 (9th Cir. 1983).

Employees engage in similar conduct when the offenses committed are comparable in seriousness, meaning no differentiating or mitigating circumstances distinguish the two employees. Vasquez, 349 F.3d at 641; Hollins, 188 F.3d at 659. Where

a plaintiff contends another employee was retained despite engaging in more serious conduct, such allegations must be supported by more than the plaintiff's subjective belief that the other employee's conduct was more serious. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Likewise, similar disciplinary records support a finding that two employees are similarly situated. But where one employee's discipline history is more serious and extensive than the other, the employees generally are not similarly situated. Leong v. Potter, 347 F.3d 1117, 1121, 1124 (9th Cir. 2003); Wall, 718 F.2d at 909. "When warranted by the circumstances, an employer may discipline repeat offenders more severely than first-time offenders." Wall, 718 F.2d at 909.

Here, taking the evidence in the light most favorable to Johnson, Johnson has presented a prima facie case that he is similarly situated to Smith. Johnson and Smith were both security supervisors, both reported to Debra Knowles, and both were subject to Security Department Standard Operating Policies. Johnson and Smith engaged in similar conduct by violating company policy. Johnson engaged in an inappropriate use of force with a guest, and Smith followed a guest off company property. Although the two offenses are different in nature, Western has failed to offer evidence that the nature of Smith's offense is a mitigating circumstance that distinguishes Smith from Johnson. To the contrary, Johnson argues Smith's violation was more serious than his own and offers Strickland's Declaration and Banos's report as evidence of the relative severity of Smith's infraction. (Pl.'s Opp'n, Ex. 2 at 3. Ex. 3 at 2.)

Furthermore, Johnson's and Smith's disciplinary records were similar; both were counseled to keep the volume turned up on their radios. Both had additional incidents of misconduct. Specifically, Western disciplined Smith for losing a $300 bag of quarters, excessive absences, and losing an original fill ticket. Meanwhile, Western disciplined Johnson for improper use of force after he made a threatening gesture at a guest. Although Johnson's prior discipline involved similar conduct to the incident at issue—improper use

11

of force—and Western did not previously discipline Smith for similar conduct—following a guest off company property, Johnson's prior discipline occurred over two years prior to the incident at issue here and Western rehired and promoted Johnson in the interim. Western's actions suggest Western did not consider Johnson's prior infraction serious.

The standard at the prima facie stage is minimal and distinctions between employees must be material to undermine plaintiff's prima facie case. Here, the distinctions between Johnson and Smith are not material. Accordingly, the Court finds Johnson has presented sufficient evidence to establish a prima facie case that Western treated Johnson differently from a similarly situated employee outside Johnson's protected class.

**B. Defendants' Nondiscriminatory Reason**

If a plaintiff makes out a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the employment action. This requires the employer to set forth a legally sufficient explanation for taking adverse action against the plaintiff. Burdine, 450 U.S. at 254-55. This burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

Defendants provided evidence demonstrating Defendants terminated Johnson for violating company policy. Defendants offered copies of the Security Department Standard Operating Policies, the Surveillance Department Incident Report, Johnson's Record of Counseling, Donald Green's Statement regarding a meeting between Johnson and security management, and Johnson's Termination Form. (Defs.' Second MSJ, Exs. 9, 12, 14, 15, 17.) At his deposition, Johnson admitted Western was justified in terminating him for violating company policy. (Defs.' Second MSJ, Ex. 2 at 98.) Thus, Defendants' explanation, if true, is a legally sufficient, nondiscriminatory reason for Johnson's termination. Defendants have met their burden.

///

### C. Johnson's Evidence of Pretext

If the employer articulates a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of unlawful discrimination "simply drops out of the picture." Hicks, 509 U.S. at 510-11. The burden then shifts "back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual." Lowe v. City of Monrovia, 775 F.2d 998, 1008 (9th Cir. 1985) (citing Burdine, 450 U.S. at 255-56). At the pretext stage the plaintiff must offer "specific, substantial evidence" to overcome the employer's motion for summary judgment. Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983).

A plaintiff must persuade the court that the employer's reason for termination is "in fact a coverup for a racially discriminatory decision." McDonnell Douglas, 411 U.S. at 805. A plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. A mere refutation of the employer's explanation is insufficient. Little v. Windermere Relocation, Inc., 301 F.3d 958, 969 (9th Cir. 2002).

In this case, Johnson does not contend Western's reason for termination is untrue. Johnson admitted Western was justified in terminating him for violating company policy. Rather, Johnson offers evidence that race discrimination is the real reason for Johnson's termination, and thus Western's reason is unworthy of credence. In doing so, Johnson contends he is similarly situated to Smith, yet Smith received more favorable treatment. Because Smith is Caucasian and Johnson is African American, Johnson argues this disparity in treatment is evidence that Western's proffered reason for his termination is pretextual.

As discussed above, the question of whether employees are similarly situated is an element of the plaintiff's prima facie case as well as evidence of pretext. At the prima facie stage, the plaintiff's burden is "not onerous," and the evidence need only "give rise to

an inference of unlawful discrimination." Burdine, 450 U.S. at 253.  Whereas at the pretext stage the plaintiff must offer "specific, substantial evidence of pretext" to defeat the defendant's motion for summary judgment.  Steckl, 703 F.2d at 393.

The Johnson and Smith incidents are similar in a variety of ways.  Both incidents involves uncooperative guests that directed abusive language at security.  Both Johnson and Smith made physical contact with the guest, after which both supervisors handcuffed the guest, escorted the guest to the security office, and detained the guest until police arrived.  Both Johnson and Smith violated company policy.  Although Western did not investigate the Smith incident and thus did not determine which company policies Smith violated, the record suggests Smith may have violated the use of force policy because according to Strickland, Smith made the first aggressive move towards the guest.  It is undisputed Johnson used excessive force when he detained the guest and threatened the guest while the guest was in handcuffs.  Therefore, viewing the facts in the light most favorable to Johnson, a reasonable jury would find both employees violated the use of force policy.

However, the incidents differ in that Johnson threatened to physically harm a guest while in custody, and there is no evidence that Smith made any such threat.  This may suggest the Johnson incident was more serious; however, a reasonable jury would find the Smith incident was more serious.  Johnson did not make the first aggressive move, rather the guest hit Johnson's hand after Johnson gestured for the guest to calm down.  By contrast, according to Strickland's statement and Banos's report, Smith made the first aggressive move.  Furthermore, although both Johnson and Smith violated the use of force policy, Smith also violated trespass procedures by following the guest off Western property.  Banos concluded that Smith's actions raised greater liability concerns than Johnson's actions.  Viewing these facts in the light most favorable to Johnson a reasonable jury could find the Smith incident was more serious than the Johnson incident.

In response to the incidents, Western terminated Johnson, but did not investigate

Smith, suggesting Western treated Johnson more harshly than Smith. Although Western contends it did not know about the Smith incident until witnesses made allegations of improper conduct to NERC, Hingada filed an incident report shortly after the incident and Western did not investigate. Further, after receiving notice from NERC, Western still did not fully investigate. Accordingly, a reasonable jury could find Western treated Johnson more harshly than Smith for excessive use of force in violation of company policy.

Additionally, Johnson's and Smith's employment histories are similar. Both were security supervisors. Western counseled both Johnson and Smith to keep the volume on their radios turned up. But unlike Smith, Western counseled Johnson on the proper use of force prior to the incident that led to his termination. By contrast, Smith had no prior discipline related to use of force or following guests off company property. However, per Banos's report, Western disciplined Smith for losing a $300 bag of quarters, excessive absences, and losing an original fill ticket. Thus, Johnson's discipline history at Western includes three incidents, while Smith's discipline history includes five incidents. Moreover, Johnson's first two incidents—the radio and the fist incidents—occurred two and a half years before the incident that led to his termination and Western rehired and promoted Johnson in the interim.

In sum, viewing the facts in the light most favorable to Johnson a reasonable jury could find that (1) both employees violated the use of force policy; (2) the Smith incident was more serious than the Johnson incident; (3) Western treated Johnson more harshly than Smith for violating the use of force policy; (4) Smith had a more extensive discipline history than Johnson; and (5) Johnson's prior discipline occurred two and half years ago, after which Western rehired and promoted Johnson. Accordingly, Johnson has offered specific, substantial evidence raising a genuine issue of fact as to whether Western's proffered reason for terminating Johnson is pretextual.

Because Johnson has established a prima facie case and has offered specific,

substantial evidence of pretext, genuine issues of material fact remain for trial. Accordingly, the Court denies Defendants' Motion for Summary Judgment on both race discrimination claims.

### D. Limitations on Damages

Title VII remedies for intentional discrimination include back pay, front pay, compensatory damages, and punitive damages; but Title VII remedies are limited. Title VII limits back pay to two years prior to the date the plaintiff filed a charge with the EEOC, and back pay is reduced by "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against." 42 U.S.C. § 2000e-5(g)(1). But the defendant bears the burden of proving the plaintiff failed to mitigate damages. Pa. State Police v. Suders, 542 U.S. 129, 152 (2004). Front pay is an equitable remedy under Title VII section 2000e-5(g), intended to compensate the plaintiff "during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). Thus, reinstatement is the preferred remedy, but front pay is available when reinstatement is impossible or impractical because of excessive hostility or antagonism between the parties. Gotthardt v. Nat'l R.R. Passenger Corp., 191 F.3d 1148, 1156 (9th Cir. 1999); Thorne v. City of El Segundo, 802 F.2d 1131, 1137 (9th Cir. 1986).

Under Title VII, punitive damages are available only if the plaintiff demonstrates the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of [the] aggrieved individual." 42 U.S.C. § 1981a(b)(1). A plaintiff must meet a higher standard beyond intentional conduct to qualify for punitive damages. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999). Although a showing of egregious or outrageous conduct is probative, it is not required; rather, a plaintiff must show that the employer discriminated "in the face of a perceived risk that its actions [would] violate federal law." Id. at 535-36.

Title VII section 1981a(b)(3)(A)-(D) caps the sum of compensatory and punitive

damages based on the number of employees employed by the defendant. Compensatory damages do not include back pay; interest on back pay; or any relief under section 2000e-5(g), including front pay. 42 U.S.C. § 1981a(b)(2); Pollard, 532 U.S. at 848. Thus, this cap does not apply to front or back pay.

Here, Defendants move the Court to limit Johnson's Title VII remedies, and Johnson has not responded to Defendants' request. Under Local Rule 7-2(d), a party's failure to file points and authorities in response to a motion "shall constitute a consent to the granting of the motion." Further, the law is clear that under Title VII back pay is limited to the two years prior to the date the plaintiff filed a claim with the EEOC. Johnson has not pointed to any authority or made any legal arguments that his back pay should not be limited. Accordingly, the Court grants Defendants' Motion for Summary Judgment in part and limits any back pay Johnson may recover under Title VII to the two years prior to the date he filed his claim with the EEOC.

Similarly, as to front pay, Title VII requires that a plaintiff show reinstatement is impossible or impractical. Johnson has not pointed to any authority or made any arguments raising a genuine issue of material fact as to whether reinstatement is impossible or impractical. Accordingly, the Court grants Defendants' Motion for Summary Judgment in part and will disallow recovery of front pay under Title VII. But because reinstatement is the preferred alternative to front pay, the Court finds a genuine issue of material fact remains as to whether Johnson will be entitled to reinstatement should he prevail on the merits.

Next, as to punitive damages, under Title VII, the plaintiff demonstrate his or her employer discriminated in the face of a perceived risk that its actions would violate federal law. Johnson has not pointed to any authority or made any arguments raising a genuine issue of material fact as to whether Western discriminated in the face of a perceived risk that its actions would violate federal law. Accordingly, the Court grants Defendants'

Motion for Summary Judgment in part and will disallow recovery of punitive damages under Title VII.

Additionally, as a matter of law, Title VII caps the sum of compensatory and punitive damages. Johnson has not pointed to any authority or made any legal arguments that the Title VII cap on the sum of compensatory and punitive damages does not apply in this case. Accordingly, the Court grants Defendants' Motion for Summary Judgment in part and because the Court will disallow punitive damages, only compensatory damages Johnson may recover under Title VII will be capped pursuant to section 1981a(b)(3)(A)-(D).

However, the burden on the party moving for summary judgment differs depending on whether the moving party would bear the burden of proof at trial. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). When the moving party would bear the burden of proof at trial, the moving party must establish "the absence of a genuine issue of fact on each issue material to its case." Id. By contrast, when the non-moving party would bear the burden of proof at trial, the moving party can meet its burden by "pointing out the absence of evidence from the non-moving party." Id. Regardless, "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003).

Here, the Court will grant Defendants' request to limit Title VII remedies to the extent discussed above because at trial Johnson would bear the burden of proving he is entitled to Title VII remedies and Defendants have pointed to an absence of evidence supporting those claims. However, as to Defendants' claim that Johnson failed to mitigate back pay damages, at trial Defendants would bear the burden of proving that claim, and Defendants have not established the absence of a genuine issue of fact. Furthermore, Johnson's failure to comply with Local Rule 7-2(d) does not alter Defendants' Rule 56 burden.

Specifically, Western contends Johnson stopped looking for work after March 2007 and cites to Johnson's deposition. However, in his deposition Johnson stated that he worked for World Market Center for three months beginning in January 2007. (Defs.' Second MSJ, Ex. 2 at 98-99.) Johnson also stated he was unemployed from the day he left World Market Center until the day of the deposition. (Id. at 101.) Counsel for Western asked, "You've been actively seeking employment?" and Johnson responded "No. I'm on disability." (Id.) Johnson's response indicates that at the time of his deposition he was not actively seeking employment, but it is unclear whether Johnson's statement applies to the two years prior to the date Johnson filed his claim with the EEOC. Later in the deposition counsel asked, "What point did you stop looking for work, Mr. Johnson?" and Johnson replied, "Never stopped." (Id. at 120.) Counsel for Western clarified, "Have you looked for work since you have had surgery in 2007?" and Johnson did not provide a direct answer. (Id. at 121.) Additionally, Defendants have not offered evidence of how much Johnson could have earned with reasonable diligence during the two years prior to the date he filed his claim with the EEOC. Therefore, Defendants have not met their initial Rule 56 burden of establishing the absence of a genuine issue of material fact as to whether Johnson failed to mitigate his back pay damages. Accordingly, the Court denies Defendants' Motion for Summary Judgment on the issue of mitigation.

///
///
///
///
///
///
///
///

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Western and PlayLV's Second Motion for Summary Judgment (Doc. #45) is hereby GRANTED in part and DENIED in part. The Motion is granted as to Defendants' request to limit Plaintiff's Title VII remedies, specifically, to limit back pay, disallow front pay, disallow punitive damages, and cap compensatory damages. The Motion is denied in all other respects.

DATED: October 18, 2011

_____
PHILIP M. PRO
United States District Judge